The Honorable Robert J. Bryan

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>REYES DE LA CRUZ, III,<br><br>Defendant. | NO. CR21-5336-RJB<br><br>UNITED STATES' SENTENCING MEMORANDUM |

During a time of unprecedented national crisis in summer and fall of 2020, Reyes De La Cruz, III, was a Washington State Employment Security Department (ESD) employee who betrayed the public trust by demanding—and in some cases extorting—at least $20,900 in bribes to facilitate fraudulent benefit payments. De La Cruz also stole personal identifying information of his friends and family to obtain an additional $113,000 in fraudulent benefits that he directed to himself. In total, De La Cruz caused ESD to pay approximately $360,000 in fraudulent unemployment benefits to individuals who did not qualify for the payments.

This conduct was not merely a lapse in judgment, but a continuation of De La Cruz's unending pattern of criminal behavior that has spanned last 20 years of his

United States' Sentencing Memorandum
*United States v. De La Cruz* / CR21-5336-RJB - 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

adulthood. De La Cruz scores as a Criminal History Category VI, which includes convictions for acts of extreme harassment, domestic violence, assault, and theft.

The United States recommends that the Court sentence De La Cruz to 51 months of imprisonment for the wire fraud and bribery convictions, to run consecutive to the mandatory 24-month sentence for aggravated identity theft, for a total of 75 months of imprisonment. This sentence is necessary to reflect the serious nature of the offense and to deter others from engaging in similar conduct. At the same time, this recommendation, which is well below the applicable Guidelines range, takes into consideration the mitigating circumstances in De La Cruz's background. The Court should also impose three years of supervised release, and order De La Cruz to pay restitution in the amount of $360,000.

## I. BACKGROUND

**A. De La Cruz Exploited His Public Employment and a National Crisis to Receive Bribes in Exchange for Fraudulent COVID-19 Pandemic Unemployment Benefits.**

In 2020, De La Cruz was one of approximately 2,000 employees ESD hired to manage 1.9 million unemployment claims filed in Washington that year, a staggering increase from the approximately 341,000 claims filed in 2019. He was hired, in part, because he is a veteran with prior experience working at ESD from 1996 until 2003. *See* PSR at ¶ 102.

From April until October 2020, De La Cruz rejoined ESD as an intake agent and claims specialist. He had full access to ESD's Unemployment Tax and Benefit (UTAB) system, which stored unemployment claims applications, supporting documents, and internal file notations. *Id.* at ¶ 11. De La Cruz's employee access allowed him to create or modify information on claim forms, make file notations, and "clear" issues flagged by ESD's adjudication system. *Id*.

//

United States' Sentencing Memorandum
*United States v. De La Cruz* / CR21-5336-RJB - 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

De La Cruz quickly learned about the new benefits and parameters authorized under the CARES Act to mitigate the economic impacts of the COVID-19 pandemic on American workers. Among the expansion of benefits was the ability for impacted workers to claim retroactive unemployment benefits as early as January 27, 2020, for up to 39 weeks. As a result, backdated benefit claims could easily amount to tens of thousands of dollars. *Id.* at ¶ 9.

Using this knowledge and his employee access to UTAB, in at least 10 instances in August and September of 2020, De La Cruz engineered fraudulent claims to bypass ESD's adjudication system and demanded kickbacks from the claimants for his efforts. *Id.* at ¶ 14-15; Plea Agreement, Dkt. 25 at ¶ 7.f. These kickback payments ranged from approximately $500 to $6,500 and totaled at least $20,900. *Id.*

In one instance, De La Cruz explained in detail via a Facebook message to D.D. how a backdated claim of approximately $13,000, which is the basis for Count 4 (wire fraud), would not have occurred but for his intervention:

> I am the one who adjudicated your claim. You would have been denied those weeks because you only had those paper receipts and tried to use them as wage verification. I went all the way back to Feb 29th 2019 and made it to where you were monetarily eligible because without me pushing those receipts off as legal wage verification, there is no way you would have been eligible. You weren't even going to have a decision made anytime soon because the case didn't even hold any supportable documentation. It was going to presumptively deny your claim. . . Anyways, on the 8th and 9th of this month, or this last weekend, I spent a lot of time doing some fact finding statements, clearing and overriding issues on your claim until I finally got your claim to where it is now. . . [I.A.] brought your name and social security number and told me that you knew the deal and that you were wanting to take my deal in exchange for my portion of the benefits. This is the reason why your [sic] sitting on $13,458.

Ex. A. As a result of De La Cruz's intervention, D.D. ultimately received approximately $39,000 in pandemic unemployment benefits. ESD has no record of D.D. receiving

United States' Sentencing Memorandum
*United States v. De La Cruz* / CR21-5336-RJB - 3

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

wages in the state since 2017, and D.D. has provided no documentation of legitimate self-employment that was the basis for his claims. Dkt. 25 at ¶ 7.g.

In another instance, De La Cruz used his official position to improperly clear nearly 70 issues in UTAB for E.R. to receive a backdated payment of approximately $15,183 on August 14, 2020, and demanded a $3,500 kickback, which is the basis for Count 11 (bribery). *Id.* at ¶ 7.j; PSR at ¶ 16-17.

In some instances, if an individual resisted, De La Cruz threated to alter the claim so that benefits would no longer be disbursed. Dkt. 25 at ¶ 7.f.

**B.   De La Cruz Stole and Used Personal Identifying Information of Friends and Family to Funnel Fraudulent Benefits to Himself.**

During the same time period, De La Cruz also stole the personal identifying information of at least four friends and family members and used his employee access to file fraudulent claims in their identities. He then directed the benefits to be paid to debit cards that were sent to mailboxes De La Cruz accessed. PSR at ¶ 18. In total, De La Cruz fraudulently obtained approximately $113,000 for himself in this manner. *Id.*

While De La Cruz was employed at ESD, he was able to use his employee access to file weekly fraudulent claims and continue receiving benefits after the initial backdated payment. However, after ESD terminated his employment in October 2020, De La Cruz attempted to resume fraudulent payments for at least two identities by impersonating the individuals. *Id.* Specifically, between February and March 2021—just as the extension of the CARES Act unemployment benefits were announced—De La Cruz impersonated T.D. on multiple recorded phone calls with bank and ESD personnel, using T.D.'s personal identifying information to fraudulently obtain additional benefits. Dkt. 25 at ¶ 7.h. During the same time period, De La Cruz also attempted to obtain additional benefits under A.D.'s identity by impersonating A.D. in handwritten correspondence to ESD. *Id.*

United States' Sentencing Memorandum
*United States v. De La Cruz* / CR21-5336-RJB - 4

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

In all, De La Cruz caused ESD to pay out $360,000 in fraudulent claims. PSR at ¶ 19.

## II. PROCEDURAL HISTORY

On September 22, 2021, the Grand Jury returned a 20-count indictment charging De La Cruz with wire fraud in connection with a presidentially-declared emergency or major disaster (Counts 1-6), in violation 18 U.S.C. § 1343; bribery by an agent of an organization receiving federal funds (Counts 7-15), in violation of 18 U.S.C. § 666(a)(1)(B); extortion under color of official right (Count 16), in violation of 18 U.S.C. § 1951(a); and aggravated identity theft (Counts 17-20), in violation of 18 U.S.C. § 1028A(a)(1). PSR at ¶ 1.

Agents arrested De La Cruz in the Eastern District of Washington on September 24, 2021, and he made his initial appearance in the Western District of Washington on October 7, 2021. *Id.* at ¶ 4. Judge Creatura ordered De La Cruz detained after finding that he posed a danger to the community due to his substantial criminal history, was a flight risk, and has a history of failing to appear. Dkt. 13.

On June 22, 2022, the defendant pled guilty to Counts 4 (wire fraud), 11 (bribery), and 17 (aggravated identity theft). Dkt. 26.

//
//
//

United States' Sentencing Memorandum
*United States v. De La Cruz* / CR21-5336-RJB - 5

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## III. SENTENCING GUIDELINES CALCULATIONS

The United States agrees with the Probation Office on the Sentencing Guidelines calculations and has no objections to the facts contained in the PSR. All counts involve substantially the same harm and are grouped together in a single group, pursuant to USSG § 3D1.2(b), because the counts involve the same victim, and two or more acts are connected by a common criminal objective or constitute part of a common scheme or plan. The offense level applicable to the group is the highest offense level in the group. USSG § 3D1.3(a).

In this case, Count 11 (bribery) has the highest offense level. The base level for the offense is 14 (§ 2C1.1(a)(1)). A two-level enhancement applies because the conduct involved more than one bribe (§ 2C1.1(b)(1)), and a 12-level increase applies because the loss amount was more than $250,000 but less than $550,000 (§ 2C1.1(b)(2) and 2B1.1(b)(1)(G)). PSR at ¶¶ 24-33. With a downward three-level adjustment for acceptance of responsibility, the total offense level is 25. *Id.* at ¶¶ 34-36.

The defendant's criminal history category is VI with 14 points, despite dozens of arrests that were not scored under the Guidelines. *Id.* at ¶¶ 62-63, 65-66. The resulting Guidelines range is 110-137 months of imprisonment for Counts 4 (wire fraud) and 11 (bribery) and a mandatory minimum consecutive sentence of 24 months imprisonment for Count 17 (aggravated identity theft).

## IV. SENTENCING RECOMMENDATION

The United States recommends that the Court impose a 75-month term of imprisonment, three years of supervised release, and $360,000 in restitution. The United States supports the conditions of supervision proposed by the Probation Office.

This recommendation is substantially below the Guidelines range to account for the De La Cruz's acceptance of responsibility and mitigating factors concerning his background, including his military service and resulting trauma. For the reasons set forth

United States' Sentencing Memorandum
*United States v. De La Cruz* / CR21-5336-RJB - 6

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

below, this recommendation is appropriate given of "the nature and circumstances of the offense," and the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," and "to protect the public from further crimes of the defendant." 18 U.S.C. §§ 3553(a)(1), (a)(2)(A), and (a)(2)(C).

**A.  The Nature and Circumstances of the Offense—De La Cruz's Knowing Exploitation of Public Office During a National Crisis is an Aggravating Factor.**

Because two years have lapsed since De La Cruz committed the charged offenses, it is easy to forget the chaotic, desperate, and dire circumstances facing our nation and our public servants who were charged with stemming the catastrophic economic impact of the first six months of the COVID-19 pandemic. When ESD hired De La Cruz in April 2020, approximately 20.6 million American were unemployed, far surpassing the Great Recession's peak of 15.2 million in 2009.[1] Unlike these millions of Americans, De La Cruz was fortunate enough to be hired into a reliable job that allowed him to work remotely. Nonetheless, De La Cruz used his public employment to leverage a national crisis into a personal windfall of $133,900.

But for De La Cruz's personal intervention, ESD's adjudication system would have prevented the payment of the fraudulent claims he cleared through the system. As he detailed to D.D., De La Cruz took advantage of his access to UTAB to manipulate the system by using fraudulent fact-finding statements to clear and override issues flagged by ESD's system. *See supra* at 3. Not only did De La Cruz use his official position to facilitate fraudulent claims, but he did so for a price. On or about August 10, 2020, in one if his earliest solicitations for a kickback, De La Cruz demonstrated that he was

---

[1] U.S. Bureau of Labor Statistics, "Unemployment Rises in 2020, as the country battles the COVID-19 pandemic" (June 2021), *available at* https://www.bls.gov/opub/mlr/2021/article/unemployment-rises-in-2020-as-the-country-battles-the-covid-19-pandemic.htm.

United States' Sentencing Memorandum
*United States v. De La Cruz* / CR21-5336-RJB - 7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

knowingly jeopardizing his employment:

> I have done this for a few close fam/friends only, and **it could get me questioned by my supervisor and ESD**. So I am doing this and helping you guys get a big amount of money that otherwise would not be obt ainable [sic]. So I am asking for a percentage of the benefits. I help you, you help me. It's a lot of work making this work and remember, it's money that wouldn't be available unless I did it the way I did it. So it should be no problem paying me a small portion for the large amount that I am getting you guys.

Ex. B.

In other words, De La Cruz knew what he was doing was wrong, but he was willing to sell his position and authority for a price. Doing so in the context of a national crisis when millions of Americans relied on our public servants to do what was right is particularly egregious and warrants a significant sentence of imprisonment.

Notably, both Congress and the Sentencing Commission have endorsed sentencing enhancements during national emergencies and major disasters. *See* 18 U.S.C 1343 (increases maximum penalties to 30 years imprisonment and $1 million fine); USSG § 2B1.1(b)(2)(12) (two-level increase applied for offenses involving disaster fraud). Congress enacted the enhanced statutory penalty for wire (and mail) fraud in response to reports of widespread fraud and abuse in connection to disaster funds disbursed for Hurricanes Katrina and Rita. The Senate Judiciary Committee report noted:

> We want to help ensure that federal money goes to the right people and does not get stolen by criminals posing as victims. Congress wants to provide appropriate recovery and relief resources to affected States, and also ensure that these resources are protected and distributed only to the real victims–not to individuals seeking to take advantage of the disaster.

Senate Report No. 110-69, 110th Cong., 1st Session (May 22, 2007).

In this case, the government relied on De La Cruz to assist in protecting and distributing pandemic benefits to real victims; instead, he was the criminal seeking to take advantage of the disaster that Congress intended to deter.

United States' Sentencing Memorandum
*United States v. De La Cruz* / CR21-5336-RJB - 8

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**B.      Defendant's History and Characteristics—De La Cruz's Criminal History of Over 20 Years is an Aggravating Factor.**

Unfortunately, more than 22 convictions and sentences over the last 20 years did not deter De La Cruz from further criminal conduct. PSR at ¶¶ 38-59, 65. In fact, at the time he committed the instant offenses, De La Cruz was under state supervision following convictions for felony harassment for threat to kill, bail jumping, and theft in the second degree. *Id.* at ¶ 58, 61. The threat to kill, which was substantiated by the victim's 12-year-old daughter, involved a victim who believed De La Cruz would actually kill her based on a history of domestic violence during their prior five-year relationship, which included an incident that resulted in De La Cruz being charged with assault in the second degree for strangulation in 2015. *Id.* at ¶¶ 58, 65.

While the government acknowledges mitigating circumstances in De La Cruz's history, including his military service and resulting trauma, these considerations must be balanced by the multitude of "second-chances" De La Cruz has been given over the last 20 years since he was discharged in 1999. Despite the exclusion of 26 arrests that were either dismissed or did not score under the Guidelines, De La Cruz's criminal history score is 14 (Category VI). *See id.* at ¶¶ 62, 65. Accordingly, a significant sentence of imprisonment is warranted.

**C.      A Substantial Term of Imprisonment is Necessary to Deter and is Just Punishment for the Offense.**

General deterrence is a key consideration in this case. ESD and other aid-providing agencies must be able to rely on their employees to adjudicate claims honestly. As this case shows, there can be a strong financial incentive for employees to abuse the system and push through fraudulent claims for their own gain. This sentence must be substantial enough to counteract that incentive. This case has garnered widespread attention in local and national publications,[2] so it is important that others see that this

---

[2] *See, e.g.,* Associated Press, "Ex-Washington State Employee Pleads Guilty to Pandemic Fraud," *U.S. News & World Report*, June 24, 2022, *available at* https://www.usnews.com/news/best-states/washington/articles/2022-06-

United States' Sentencing Memorandum
*United States v. De La Cruz* / CR21-5336-RJB - 9

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

crime had significant consequence. A substantial term of imprisonment will discourage public servants from exploiting their employment for personal gain, particularly when our public institutions are vulnerable during crisis. Additionally, the public at-large will be deterred from defrauding disaster benefits intended to assist real victims.

Moreover, a substantial term of imprisonment is necessary to hold De La Cruz accountable as just punishment. De La Cruz's crimes defrauded the public fisc and made limited resources unavailable to qualified individuals. More difficult to quantify is the harm De La Cruz caused by eroding public trust in public servants, the vast majority of whom are committed to serving our communities.

## IV. CONCLUSION

The Court should sentence De La Cruz to 75 months of imprisonment, three years of supervised release, and order restitution in the amount of $360,000.

Dated: September 9, 2022

Respectfully submitted,

NICHOLAS W. BROWN
United States Attorney

*s/ Cindy Chang*
CINDY CHANG
SETH WILKINSON
Assistant United States Attorneys
700 Stewart Street, Ste 5220
Seattle, WA 98101
Telephone: (206) 553-7970
Fax: (206) 553-0582
Email: Cindy.Chang@udsoj.gov
Seth.Wilkinson@usdoj.gov

---

23/ex-wa-employment-employee-pleads-guilty-to-pandemic-fraud; Brunner, Jim and Paul Roberts, "Former Washington state employee charged with stealing unemployment funds, plus bribery and extortion," *The Spokesman-Review*, Sept. 24, 2021, *available at* https://www.spokesman.com/stories/2021/sep/24/former-washington-state-employee-charged-with-stea/.

United States' Sentencing Memorandum
*United States v. De La Cruz* / CR21-5336-RJB - 10

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970